# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SARAH MEARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:05CV150CDP/MLM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action brought pursuant to Title 42 U.S.C. § 405(g) for judicial review of the final

decision of Jo Anne Barnhart ("Defendant") denying the application for Social Security benefits

under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq., the application for Supplemental

Security Income ("SSI") based on disability under Title XVI of the Act, and the application for

widow's insurance benefits filed by Plaintiff Sarah Meares ("Plaintiff").  Plaintiff has filed a brief in

support of her Complaint. Doc. 12.  Defendant has filed a brief in support of her Answer. Doc. 14.

The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Doc. 4.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits, SSI benefits, and widow's insurance

benefits on October 21, 2002, alleging a disability onset date of May 14, 1992.[1] (Tr. 11, 66-68).

---

[1]     The Administrative Law Judge ("ALJ") explained that Plaintiff previously filed
applications for a disability insurance benefits and supplemental security income on November 14,
2000; that while these applications were pending her husband died; and that, therefore, Plaintiff
filed an application for widow's benefits. The ALJ further explained that an ALJ issued a decision
denying Plaintiff benefits pursuant to all three applications on April 11, 2002, and that Judgment
affirming the denial of benefits was ultimately issued by the United States District Court for the

Plaintiff's application was denied and she requested a hearing before an ALJ.[2]  A hearing was held

before ALJ Robert L. Neighbors on November 14, 2003. (Tr. 35-54).  The ALJ found that Plaintiff

was not disabled at any time through the date of the decision, November 14, 2003. (Tr. 11-21).

Plaintiff filed a timely request for review with the Appeals Council which denied Plaintiff's request

on August 20, 2005. (Tr.3-5).  In denying Plaintiff's request for review the decision of the ALJ

became the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

Plaintiff testified that at the time of the hearing she was 56 years of age and weighed 120

pounds;  that she is 4' 11" tall; that she has lost 80 pounds in 18 months prior to the hearing due to

"being sick, not having an appetite, and being stressed out"; and that she has a tenth grade education.

(Tr. 38-39). Plaintiff further testified that she had worked in a nursing home as a "CNA" and

housekeeper and that she has performed seasonal farm work chopping cotton.  Plaintiff said that at

the time of the hearing she was working 10 to 15 hours a week as a dietary aide; that sometimes she

has worked 20 hours or more in this job; that in the several weeks prior to the hearing she worked

20 hours a week; that her duties as a dietary aide include washing dishes and baking cakes and

cookies; that she had held this job for five months; and that her rate of pay is $5 per hour and her

---

Eastern District of Missouri on September 18, 2003.  (Tr. 11). As such, the ALJ found that the
beginning onset date in the matter under consideration can be no earlier than April 12, 2002, the
day after the ALJ's decision in Plaintiff's previous case. (Tr. 13).

[2]        Missouri is one of several test states participating in modifications to the disability
determination procedures which apply in this case.  See 20 C.F.R. § § 404.906 and 404.966
(2002).  These modifications include, among other things, the elimination of the reconsideration
step and at times, the elimination of the Appeals Council review step in the administrative appeals
process.  See id.  Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial
of benefits to the administrative law judge level.

take-home pay is usually $196 every two weeks. (Tr. 41-43, 53). Plaintiff said that in her job as a dietary aide she needs assistance with the big pans because they are difficult for her to lift. (Tr.43).

Plaintiff testified that she unable to work full time because of her blood pressure and blood sugar and that she has been unable to engage in heavy lifting since a hysterectomy. (Tr. 44). Plaintiff further testified that she takes blood pressure medication; that on the day of the hearing her blood pressure was 191/115; that when her blood pressure is up, she gets dizzy, bumps into things, and experiences poor vision; that such spells happen nearly every day; that when spells happen at her part time job, she must sit down for a while; that she has been hospitalized for her blood pressure; and that she has difficulty reading while on the job. (Tr.45-47, 51). Plaintiff said that a week prior to the hearing her blood sugar was 550; that she was given medication for her blood sugar at this time; and that she has never been hospitalized for her blood sugar. (Tr. 47-48, 51). Plaintiff also testified that she has difficulty breathing and that she uses an inhaler twice a day. (Tr. 50).

Plaintiff testified that she can not work at a job where she would have to be on her feet for four or six hours out of an eight-hour shift because that would interfere with her breathing; that she has problems with her back and colon which would preclude her from doing "that much standing and walking"; that too much standing and walking causes her left side to swell; and that she is unable to lift 20 pounds. (Tr.48-49, 51).

Plaintiff testified that since December 2001 she has lived in a car and with her son and his wife and that she does not have enough money to turn on the gas where she currently lives. Plaintiff also testified that during the day she tries to clean her apartment and that she goes to a friend's house. She further testified that she and the friend "go riding around for awhile." (Tr. 49).

# MEDICAL RECORDS

Medical records from the Monette Family Practice Clinic ("Monette") reflect that on September 15, 2000, Plaintiff's blood pressure was 176/90 and that her weight was 176 1/2. (Tr. 171).

Monette records, dated February 6, 2001, state that Plaintiff had anxiety and hypertension; that Plaintiff returned for a medication refill; that her blood pressure was 178/90; and that her weight was 181 1/2. (Tr. 170).

Records of St. Bernard's Regional Medical Center ("St. Bernard's"), dated February 11, 2001, reflect that Plaintiff was admitted on that date and that the diagnosis upon admission was elevated blood pressure. (Tr. 119). Records also reflect that Plaintiff was admitted for uncontrolled hypertension; that Plaintiff's blood pressure improved with medication; that on February 14, 2001, her blood pressure was 132/65; and that pursuant to heart catheterization the impression was angiographically normal epicardial coronary arteries, normal left ventricular volumes and normal systolic function. Records of St. Bernard's further reflect that Plaintiff's discharge diagnosis was hypertension, left lower lobe pneumonia, and chronic obstructive pulmonary disease; that she was discharged on February 17, 2001, in stable and improved condition; and that upon discharge she was told to follow-up with Dr. Parten and instructed not to smoke. (Tr. 119, 120-21). A cath report made during Plaintiff's hospital stay reflects that that Plaintiff did not have any significant fixed stenosis and that her chest discomfort was not likely due to atherosclerotic coronary disease. (Tr. 130).

Record's of St. Bernard's, dated May 5, 2001, reflect that Plaintiff was seen in the emergency room; that an x-ray of her chest was normal; that her diagnoses upon discharge was hypertension (not otherwise specified), headache, and vertigo; and that Plaintiff's medications included Ativan, Catapres, Lortab, Meclizine, and Darvocet-N 100. (Tr. 109, 114, 118)

Records of Trent Lamb, M.D., of May 14, 2001, reflect that Plaintiff was seen on this date and that she was assessed with hypertension; that she was prescribed Ativan; that she complained of hypertensive symptoms such as chest pain and intermittent shortness of breath; and that her blood pressure was 180/110 and then rechecked at 160/100. (Tr. 168).

Monette records reflect that Plaintiff was seen for ailments including hypertension, depression, edema, calf pain, chest pain, and left arm pain on May 30, 2001, June 30, 2001, July 24, 2001, August 28, 2001, October 4, 2001, October 29, 2001, November 15, 2001, and December 10, 2001. Records reflect that medications prescribed on these dates included Diovan, Premarin, Zoloft, Alprazolam (Xanax), Celexa, K-Dur, and Potassium. (Tr. 155, 158-59, 160, 163-166).

Records of St. Bernard's reflect that Plaintiff was admitted for chest pain on October 29, 2001; that myocardial infarction was ruled out; that an EKG did not show any significant abnormalities; and that she was discharged on October 30, 2001, at which time she was "strongly encouraged" to stop smoking. (Tr. 94-95).

Records of Monette, dated May 2, 2002, state that Plaintiff was seen for a check of hypertension; that her blood pressure was 152/90 and her weight was 193; and that Plaintiff requested a nerve pill. (Tr. 155).

Records of Monette reflect that on May 29, 2002, Plaintiff's blood pressure was 130/90 and her weight was 196 pounds; that Plaintiff's depression was worse; that she was not sleeping; and that Plaintiff was upset because her daughter-in-law had moved out and she was on her own. (Tr. 154).

Records of the Family Counseling Center, reflect that Plaintiff received treatment from June 20, 2002 through October 28, 2002. (Tr. 173-200). Sylvia Webster, M.A., of the Family Counseling Center, reported that the initial assessment was major depression, recurrent, with a Global

Assessment Functioning ("GAF") of 55 [3]; that Plaintiff's goal was to develop skills to cope with emotions and past abuse issues; and that Plaintiff characterized her problems as moderate and said that she wanted to get better. (Tr. 188-98).

On June 20, 2002, Ms. Webster completed a Medical Source Statement, Mental, for Plaintiff. Ms. Webster opined that Plaintiff was markedly limited in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. She further opined that Plaintiff was moderately limited in the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination or proximity to others without being distracted by them, and the ability to make simple work-related decisions. (Tr. 199). Ms. Webster also opined that Plaintiff was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, in the ability to accept instructions and respond appropriately to criticism from supervisors, in the ability to respond appropriately to changes in the work setting, and in the ability to travel in unfamiliar places or use public transportation. Ms. Webster also opined that

_____

[3]     Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild," Scores of 90 or higher represent absent or minimal symptoms or impairment. Id. at 32.

Plaintiff was moderately limited in the ability to interact appropriately with the general public, in the ability to ask simple questions or request assistance, and in the ability to get along with coworkers or peers without distracting them. (Tr. 200). Ms Webster further commented that given Plaintiff's "physical and mental status, it is a poor prognosis for her to obtain gainful employment." (Tr. 200).

Ms. Webster reported on June 26, 2002, that Plaintiff's counseling session centered around Plaintiff's abusive relationship with her deceased husband and that Plaintiff's GAF was 55. (Tr. 187). Counseling notes further reflect that Plaintiff had a counseling session on July 9, 2002, at which time her GAF was 55. (Tr. 186). Counseling notes of July 18, 2002, state that Plaintiff seemed "much more in control this week"; that she was exhibiting more signs of independence; and that she had a GAF of 60. (Tr. 185). Counseling notes of July 30, 2002, reflect that Plaintiff's depression had decreased; that she was talkative and pleasant; and that her GAF was 60. (Tr. 184).

Monica Robles, M.D., reported that she saw Plaintiff on August 6, 2002, at which time Plaintiff was diagnosed with dysthmia, post-traumatic stress disorder, and bereavement. Dr. Robles's notes reflect that Plaintiff was to continue taking Zoloft. (Tr. 181-83).

Ms. Webster reported on August 7, 2002, that Plaintiff discussed her interpersonal relationships. Ms. Webster noted on this date that Plaintiff was "receptive -improvement [was] evident. Good sessions-good prognosis." She further reported that Plaintiff had a GAF of 65. (Tr. 180). On August 15, 2002, Ms. Webster reported that Plaintiff had a GAF of 65 and that Plaintiff was becoming more insightful. (Tr. 179).

Ms. Webster reported on September 5, 2002, that Plaintiff's "prognosis is good, but it will take a lot of work." She further reported that Plaintiff had a GAF of 60. (TR. 178).

Dr. Robles's notes reflect that Plaintiff was seen on September 10, 2002, on which date Plaintiff reported that she was feeling more depressed and that she was sleeping well with medication.

Dr. Robles reported on this date that Plaintiff did not have psychotic thinking and that Plaintiff's diagnosis was dysthmia, post-traumatic stress disorder, and bereavement. (Tr. 177).

Ms. Webster reported on September 24, 2002, that Plaintiff was less depressed; that she was feeling some anxiety; that family stress was detrimental to Plaintiff's improvement; and that Plaintiff's GAF was 60. (Tr. 175).

Monette records reflect that Plaintiff was seen on September 27, 2002, for medical review and follow up and that her complaints on this date included headaches and not sleeping. Records of this date further reflect that her blood pressure was 142/82 and she weighed 198 pounds. (Tr. 153).

Monette records reflect that Plaintiff's blood pressure was 188/98 on October 22, 2002. (Tr. 152).

On October 24, 2002, Dr. Robles reported that Plaintiff was still having symptoms of depression including a depressed mood, crying spells, trouble sleeping, and irritability; that she had anxiety; that she did not have hallucinations or psychotic thinking; and that she was prescribed Welbutrin. (Tr. 174).

A Psychiatric Review Technique form was signed by Marsha J. Toll, Psy, D., on November 11, 2002, on which form it was reported that there was insufficient evidence for a medical disposition. (Tr. 201).

## IV.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe

impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4).

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 849 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 426 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

**V.**
**DISCUSSION**

As stated above, the issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff is engaged in substantial gainful activity and, therefore, is not disabled. Onstead, 962 F.2d at 804. The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 (9th Cir. 1991). Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he did not make adequate findings regarding Plaintiff's residual functional capacity ("RFC"). In particular, Plaintiff contends at Step 2 of the sequential analysis that the ALJ failed to determine

whether Plaintiff can perform her past relevant work and that the ALJ incorrectly found that Plaintiff does not have a severe mental impairment.  Plaintiff further argues that the ALJ "performed virtually no analysis" of her credibility and that this "warrants" reversal.  Plaintiff also alleges that the ALJ should not have applied the Medical-Vocational Guidelines because she suffers from non-exertional impairments.

**A.      Plaintiff's Alleged Mental Impairment:**

Plaintiff argues that the ALJ erred in not finding that she has a severe mental impairment. Contrary to Plaintiff's argument, the ALJ did find that Plaintiff had a severe mood disorder.  (Tr. 20). The ALJ, however, found that Plaintiff's severe mental impairment did not last for at least 12 months during the period from April 12, 2002, through the date of the decision, April 13, 2004.

At 20 C.F.R. § 404.1520a the Commissioner has supplemented the five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional Regulations dealing specifically with mental impairments.  Also, 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(A) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and *consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.*  (emphasis added).

Additionally, 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(D) provides that "the evaluation of a disability on the basis of a mental disorder requires sufficient evidence to ... project the probable duration of the impairment(s)."  If a Social Security claimant fails to meet the criteria at any step of the evaluation process the ALJ is not required to proceed further with the sequential analysis. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006) (quoting Goff v. Barnhart, 421 F.3d 785, 789-90 (8th Cir.2005); 20 C.F.R. § 404.1520(a)- (f) ("If a claimant fails to meet the criteria at

any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.") (internal quotations and citations omitted).

Upon reaching his conclusion that Plaintiff's severe mental impairment did not last for a continuous period of at least 12 months, the ALJ considered the records of the Family Counseling Center including records that reflected that Plaintiff characterized her problems as being moderate; and that in July 2002 she was reported to be motivated, in control, exhibiting signs of independence, committed to controlling her life, talkative, pleasant, and less depressed. The ALJ also considered that it was reported in September 2002 that Plaintiff had made progress and that her progress was good. He also noted that while in October 2002 Plaintiff was reported to still be having some symptoms of depression, she had no psychotic thinking or hallucinations. The ALJ further considered that Plaintiff did not submit records for her mental condition since October 28, 2002. The ALJ found, therefore, that Plaintiff's mental disorder did not last for a continuous period of 12 months. The record establishes that Plaintiff was treated at the Family Counseling Center from June 2002 through October 2002 which period is less than twelve months. The last record of Plaintiff's treatment was Dr. Robles report of October 24, 2002 on which date Dr. Robles reported that Plaintiff did not have hallucinations or psychotic thinking.

The court will next consider Plaintiff's argument that the ALJ did not assign enough weight to the Medical Source Statement, Mental, completed by Ms. Webster. Ms. Webster did report in this assessment that Plaintiff had a poor prognosis to obtain gainful employment and also reported that Plaintiff was markedly limited in many areas including the ability to complete a normal workday and to perform at a consistent pace without an unreasonable number of interruptions. First, the court notes that this assessment was made in June 2002 at the commencement of Plaintiff's treatment. Moreover, therapists are not "acceptable medical source(s)" for purposes of 20 C.F.R. § 404.1513(a).

Their opinions, however, may be considered as "other" medical sources. Id. at (d)(1). "In addition to evidence from the acceptable medical sources ... [an ALJ] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work. Other sources include ... therapists." Id. While Ms. Webster reported in her assessment that in her opinion Plaintiff had a poor prognosis for work activity, as a counselor Ms. Webster is not considered an acceptable medical source but rather is considered an "other source" for purposes of evaluation of a claimant's alleged disability. 20 C.F.R. § 404.1513(a). As such, the ALJ was not required to specifically discredit Ms. Webster's opinion. Id. at (d)(1).

Moreover, Ms. Webster subsequently reported in August and September 2002 that Plaintiff's condition had improved and that she had a good prognosis. Ms. Webster reported that Plaintiff's GAF was 65 in August and 60 in September 2002. As such, Plaintiff's symptoms were moderate to mild. See n. 3, above.

In regard to the ALJ's consideration of the fact that Plaintiff's last treatment for her alleged mental impairment was in October 2002, the Eighth Circuit has held that the absence of evidence of ongoing counseling or psychiatric treatment or deterioration or a change in a plaintiff's mental capabilities disfavors a finding of disability. Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir.1990)).

Upon considering the severity of Plaintiff's mental impairment and concluding that it did not last for the required duration, the ALJ considered the medical evidence, including records of Plaintiff's counseling sessions with Ms. Webster, as required by the first step of a mental impairment analysis. See Pratt, 956 F.2d at 835; 20 C.F.R. §§404.1520a(b)(1), 404.1508. As stated above, Ms. Webster reported in July 2002 that Plaintiff was in "much more control"; that she was exhibiting more signs of independence; that her depression had decreased; and that she was talkative and pleasant.

In August 2002 Ms. Webster reported that Plaintiff was becoming more insightful and in September she reported that Plaintiff's prognosis was good; that she did not have psychotic thinking; that she was less depressed; and that she was sleeping well with medication. Conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Because the record reflects that Plaintiff received counseling and treatment for her mental impairment for less than twelve months and that after treatment Plaintiff's condition had improved to a level where her condition was moderate to mild, the court finds that substantial evidence supports the ALJ's decision that Plaintiff's alleged mental impairment did not last or expected to last for a continuous period of 12 months. Under such circumstances, the ALJ was not required to proceed further in regard to his analysis of whether Plaintiff has a disabling mental impairment. 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(A). As such, the court finds that the ALJ's determination in regard to the duration and severity of Plaintiff's alleged mental impairment is consistent with the Regulations and is supported by substantial evidence.

**B.      Plaintiff's RFC:**

Plaintiff argues that the ALJ did not make a finding of her RFC other than to say that her ability to perform work at all exertional levels is not significantly compromised by her non-exertional limitations.  Plaintiff further argues that the ALJ did not make a finding in regard to her ability to perform her past relevant work.  The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of

the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).

"The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *3 (S.S.A. July 2, 1996).

The court notes that the ALJ followed the sequential analysis. He found at Step 1 that it was not conclusive whether Plaintiff performed substantial gainful activity during the relevant period. (Tr. 14). The ALJ then stated that, therefore, he would proceed with the sequential analysis to determine whether Plaintiff was disabled for a continuous period of at least 12 months from April 12, 2002 through the date of the decision. (Tr. 14). As such, the ALJ proceeded to consider the medical evidence of Plaintiff's alleged physically disabling conditions including high blood pressure, enlarged heart, on-the-border chronic obstructive pulmonary disease, low blood sugar, and an infection in her leg and knee. (Tr. 18). In particular the ALJ considered the records of St. Bernard's from Plaintiff's February 11, 2001 hospitalization and noted records reflect that her lungs exhibited no wheezes, rales or rhonchi; that she had good air exchange; that Plaintiff's heart had a normal rate and rhythm with no evidence of murmer; that there was no evidence of swelling, tenderness, or edema in Plaintiff's extremities; that there was no evidence of acute cardiopulmonary disease; and that there was no evidence of renal artery stenosis. The ALJ further considered that on February 15, 2001, Plaintiff's pneumonia had resolved; that during hospitalization adjustment had been made for Plaintiff's hypertension, and that Plaintiff was discharged in stable and improved condition. (Tr. 16). The ALJ also considered records of St. Bernard's addressing Plaintiff's being seen on May 5, 2001, for complaints due to hypertension. The ALJ noted that on this date it was reported that Plaintiff's chest

x-ray was normal and that an EKG was borderline normal with normal sinus rhythm. (Tr. 16). The ALJ also considered that Plaintiff was hospitalized on October 29, 2001, pursuant to a concern that she might have a myocardial infarction but that this condition was ruled out and Plaintiff was discharged. (Tr. 16).

The ALJ also considered Plaintiff's treatment records from Monette commencing with records of May 2001. While the ALJ did not specifically reference Plaintiff's blood pressure readings, Monette's records reflected Plaintiff's blood pressure readings. The court notes that on May 2, 2002, Plaintiff's blood pressure was reported to be 152/90, that on May 29, 2002, it was reported to be 130/90, that on September 27, 2002, it was reported to be 142/82, and that on October 22, 2002, her blood pressure was 188/98. See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.00 C). The record does not reflect that Plaintiff suffered damage to her heart, eyes, brain or kidneys as a result of hypertension or that she sought treatment for high blood pressure after October 2002.

The ALJ further considered that after the hearing he requested that Plaintiff undergo consultive examinations including an internal medicine examination, chest x-rays and pulmonary function studies in order to further evaluate her condition but that Plaintiff chose not to keep four separate appointments and failed to contact the hearings office, the State Agency or her attorney with a reason why she did not keep these appointments. Based on Plaintiff's failure to keep these appointments the ALJ considered that it is logical that Plaintiff was no longer interested in pursuing

her claims for benefits. The ALJ also considered that the Regulations are explicit that if a claimant does not have a good reason for failing to take part in a consultive examination or test which is arranged to obtain information needed to make a determination of disability, that the Agency may find that the claimant is "not disabled." See 20 C.F.R. § § 404.1518, 416.918 ( "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled. ... [If] you have any reason why you cannot go for the scheduled appointment, you should tell us about this as soon as possible before the examination date. If you have a good reason, we will schedule another examination. "). The ALJ's finding in regard to Plaintiff's failure to keep the scheduled appointments is consistent with the Regulations and is based on substantial evidence on the record.

Based on the medical evidence the ALJ then concluded that Plaintiff does not have any documented physical impairment that has substantially affected her exertional ability to perform basic work-related activities for a continuous period of at least 12 continuous months. (Tr. 18, 20). The ALJ also stated that Plaintiff does not have any symtomatology of such duration, frequency or intensity to be disabling or to preclude the performance of all work activity for a continuous period of at least 12 months at any time during the relevant period form April 12, 2002 through the date of the decision. (Tr. 18). Thus, while not necessarily clearly stated, the ALJ found at Step 3 that Plaintiff did not have an impairment or combination of impairments for a period of at least 12 months which impairments meet or equal the Listings.

In Plaintiff's previous case she was found not disabled as of April 11, 2002. As such, Plaintiff must have presented evidence that she was disabled after April 11, 2002 and prior to the date of the ALJ's decision. See n. 1. The record reflects, as noted by the ALJ, that Plaintiff did not require

extended inpatient treatment during the relevant period after April 12, 2002; her hospitalizations were before April 2002. Also, during the relevant period she had only four visits to the Monette Family Clinic. The record reflects that Plaintiff did not seek or receive treatment for her alleged physical impairments after her single visit to Monette in October 2002. Failure to seek aggressive treatment is not suggestive of disabling pain. Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988). Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

The court finds, therefore, that the ALJ's conclusion that the record does not establish that Plaintiff was unable to perform basic work-related activities for at least a continuous period of 12 months is supported by substantial evidence on the record. Moreover, because the ALJ found that Plaintiff did not meet the duration requirement he was not required to proceed any further with the sequential analysis. 20 C.F.R. § § 404.1505(a) and 404.1509 (providing that in order to be entitled to disability benefits, a claimant must demonstrate that his or her impairments are expected to result in death, have lasted for 12 continuous months, or be expected to last for 12 continuous months); Pelkey, 433 F.3d at 577. To the extent that the ALJ's findings are not clear, an "arguable deficiency in opinion-writing technique" does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). The court finds that the ALJ's determination that Plaintiff did not demonstrate that she was unable to perform basic work-related activities for a continuous period of at least 12 continuous months is supported by substantial evidence on the record and that it is consistent with the Regulations and case law.

Although the ALJ was not required to proceed further, he did address Plaintiff's RFC to the extent that he found that she has the RFC to engage in work at "all exertional levels." (Tr. 18). The ALJ also said that there was no evidence of any persistent neurological deficit or residual weakness in any muscle group nor was there evidence that Plaintiff did not have complete use of her hands, arms and legs. Further as stated above, the ALJ's decision that Plaintiff did not suffer a mental impairment which lasted or could be expected to last for a continuous period of 12 months is supported by substantial evidence. Because the ALJ found that Plaintiff had neither physical or mental impairments which lasted or could be expected to last for a continuous period of 12 months, because these conclusion are supported by substantial evidence on the record as a whole, the court finds that the ALJ was not required to make provide more detailed findings in regard to Plaintiff's RFC other than those which he made. The court further finds that the ALJ's decision in this regard is consistent with the medical evidence, that it is based on substantial evidence on the record, and that it is consistent with the Regulations and case law. Additionally, because the ALJ further found that Plaintiff has the RFC to engage in work at all exertional levels as more fully addressed below, the ALJ was not required to determine if Plaintiff can perform her past relevant work. United States v. Rose, 181 F.3d 943 (8th Cir. 1999).

### C.     ALJ's Use of the Medical Vocational Guidelines:

Plaintiff contends that the ALJ should not have relied on the Medical Vocational Guidelines. The court has found above that because the ALJ found at Step 3 that Plaintiff did not meet the duration requirement he was not required to proceed further with the sequential analysis. The ALJ did find, however, that because Plaintiff can perform work at all exertional levels and because she is

not significantly compromised by non exertional limitations, Section 204 of the Medical Vocational Guidelines in Appendix 2 to Subpart P of Regulation No. 4 supports a finding of "not disabled." (Tr. 20). Where a claimant has no non exertional impairments resort to the Guidelines is appropriate. Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that when complaints of pain are explicitly discredited by legally sufficient reasons, Guidelines may be used). If the claimant is found to have only exertional impairments, the Commissioner may meet this burden by referring to the Medical Vocational Guidelines. Robinson, 956 F.2d at 839.

As set forth above, the ALJ's determination that Plaintiff does not suffer from a mental impairment is supported by substantial evidence as is the ALJ's determination that Plaintiff does not suffer from a physical or mental impairment which can be expected to last for a continuos period of at least 12 months. Moreover, the record does not include evidence that Plaintiff suffered from any other type of non-exertional limitation. This court's review of the record establishes that substantial evidence supports the ALJ's decision that Plaintiff does not have non exertional impairments. Because substantial evidence supports the ALJ's decision that Plaintiff did not suffer from a non exertional impairment, even assuming, arguendo, that Plaintiff had physical impairments which could be expected to last for at least 12 months and which limited her ability to perform work at all exertional levels, the ALJ was not required to utilize the assistance of a vocational expert. See Reynolds, 82 F.3d at 258. Plaintiff's argument, that the ALJ should not have relied upon the Guidelines, therefore, is without merit.

**D.      Plaintiff's Subjective Complaints:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment

for that of the ALJ.  Guillams v. Barnhart, 393 F.3d 798,  801 (8th Cir. 2005); Hutsell, 892 F.2d at

750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law,

and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis

to set aside an ALJ's decision where the decision is supported by substantial evidence.  Wheeler v.

Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds, 82 F.3d at 258; Montgomery v. Chater, 69

F.3d 273, 275 (8th Cir. 1995).   Additionally, an ALJ need not methodically discuss each Polaski

factor if the factors are acknowledged and examined prior to making a credibility determination;

where adequately explained and supported, credibility findings are for ALJ to make.  See Lowe v.

Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.

2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework

is recognized and considered."); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004); Brown

v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).   For the following reasons, the court finds that the

reasons offered by the ALJ in support of his credibility determination are based on substantial

evidence.

　　　　First, the ALJ considered that there is a lack of medical evidence since October 28, 2002.

Plaintiff argues that the ALJ should have considered Plaintiff's financial status when considering that

there is a lack of medical evidence.  Indeed, Plaintiff testified that she did not have money to pay her

gas bill and that for awhile she was living in a car.  She also informed the Administration that as of

November 10, 2003, she did not have any income. As stated above, the failure to seek aggressive

treatment is not suggestive of disabling pain.  Rautio, 862 F. 2d at 179 (8th Cir. 1988). In some

circumstances failure to seek medical treatment based on inadequate financial resources may explain

a plaintiff's failure. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989).  Even assuming that

Plaintiff's financial resources were insufficient, however, failure to seek treatment offered to indigents

detracts from a claim that a claimant did not seek medical treatment because of inadequate financial resources. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999). As such, the court finds that the ALJ's consideration of the fact that the record does not reflect that Plaintiff received medical treatment after October 28, 2002, and the ALJ's failure to consider Plaintiff's financial status are consistent with the Regulations and case law. Additionally, the ALJ's conclusions in regard to these considerations are supported by substantial evidence on the record as a whole.

Second, the ALJ considered that Plaintiff worked part-time as a dietary aide for up to 20 hours commencing June 2003. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). As such, the court finds that the ALJ properly considered that Plaintiff worked and that the ALJ's decision in this regard is supported by substantial evidence.

## VI.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in her Brief in Support of Complaint be **DENIED.** [12]

The parties are advised that they have eleven (11) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2006.